UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                               :

**BLAKE WINGATE**,                         :

                        Petitioner,     :

                                      :    **MEMORANDUM DECISION AND ORDER**

          – against –         :

                                      :    21-CV-616 (AMD) (LB)

**SUPERINTENDENT TITUS**          :

                                      :

                      Respondent.  :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* petitioner, currently incarcerated at Five Points Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) The petitioner was convicted on May 28, 2015, after a bench trial, of two counts of second-degree robbery, two counts of third-degree robbery, and two counts of second-degree assault. He was sentenced to a total of fourteen years in prison: two consecutive seven-year terms for the second-degree robbery counts, two concurrent six-year terms for the assault counts and two concurrent indeterminate sentences of two to six years for the third-degree robbery counts, followed by ten years' post-release supervision.[1] The petitioner argues that (1) the indictment was defective, (2) the prosecutor and the court committed misconduct, (3) he was arrested without probable cause, (4) the identifications and his statements should have been suppressed, (5) the evidence at trial was insufficient, (6) the court improperly considered his criminal history in imposing sentence and (7) his counsel was ineffective. (*Id.* at 5–14.) For the reasons that follow, the petition is denied.

---

[1] The assault and third-degree robbery sentences ran concurrently with the second-degree robbery sentences.

**BACKGROUND**

The petitioner assaulted and robbed two women in January 2014.  On January 15th, seventy-two-year-old Carmen Stewart was walking to a bus stop when the petitioner rode up to her on his bicycle, and punched her in the face so hard that she fell to the ground; he stole her purse and rode away.  (ECF No. 12-5 at 235–36.) [2]  The next day, the petitioner walked up behind seventy-three-year-old Martha Terrell, put her in a chokehold and pushed her to the ground; he stole her purse, limped to his bicycle and rode off.  (*Id.* at 215–19.)

Detective Ronald Martiny was assigned to investigate both cases.  (*Id.*)  He obtained surveillance video from an NYPD camera in the area where Ms. Terrell was robbed, which showed a person who fit the description of Ms. Terrell's attacker.  (*Id.*)  He used a still frame from the video to create a wanted poster.  (*Id.*)  On January 20, 2014, a police officer from another precinct arrested the petitioner for riding his bike on a sidewalk; while the petitioner was at the precinct, another officer recognized him from the wanted poster and contacted Detective Martiny.  (SR. 106.)   Detective Martiny interviewed the petitioner, and the petitioner admitted that he was the person in the surveillance still.  (SR. 91.)  Detective Martiny organized a lineup the next day.  Ms. Terrell and Ms. Stewart viewed the lineup separately; each identified the petitioner as her attacker.  (*Id.*)

I.        **Pretrial Proceedings**

On January 29, 2015, the petitioner appeared *pro se* before Judge Kenneth Holder of Queens Supreme Court and told the court that he was "waiving all hearings" and wanted to "start this trial."  (ECF No. 12-5 at 25.)  Judge Holder explained that before he could allow the

---

[2]  "SR" citations are to the State Record, which was filed with the respondent's opposition to the petition. (ECF No. 12-3.)  Trial transcripts are cited as ECF No. 12-5 and use the Bates stamp page numbers, because the respondent did not include the transcripts in the State Record.

petitioner to waive the hearings, he had to confirm that the petitioner was competent to represent himself.  (*Id.* at 26.)  First, Judge Holder advised the petitioner generally of the risks of proceeding without a lawyer, and the petitioner acknowledged those risks.  (*Id.* at 26–34.)  The petitioner said that he had represented himself about fifteen times in state and federal court, and had no legal adviser in eight of those cases.  (*Id*. at 31.)

Next, Judge Holder discussed specific pieces of evidence that the prosecutor planned to introduce at trial—for example, that the petitioner conceded in his written statement that he was the person in the surveillance video.  (*Id.* at 29.)  The petitioner responded that the statement did not "associate him with any form of criminal activity" and once more acknowledged that by waiving the hearings to which he was entitled, he was giving up the right to contest the admission of his statements at a trial on any ground.  (*Id.* at 28–30.)

Judge Holder also played the video that the prosecution planned to use at trial.  At first, the petitioner told the court that he did not believe the video was inculpatory, and waived his right to a suppression hearing.  (*Id.* at 42.)  The judge found that the petitioner's waiver was knowing, intelligent, and voluntary, in part because the video did not show the petitioner committing any crime.  (*Id.*)  However, the judge went on to observe that the video did show that the petitioner was in the immediate area when the first robbery was committed.  (*Id.*)  At that point, the petitioner said that he wanted a suppression hearing, and the judge adjourned the case to the afternoon.  (*Id.*)

Before the hearing began, however, the petitioner reversed course.  He said that he did not need a suppression hearing because he was confident that he would be "exonerated at trial." (*Id.* at 53.)  Once again, Judge Holder warned the petitioner of the potential consequences of waiver; as he had before, the judge explained that the petitioner's statements to the police would

not be admissible if the hearing established that the petitioner did not make a knowing and voluntary waiver of his constitutional rights.  (*Id.* at 54–56).  The petitioner confirmed that he understood the rights he was giving up.  (*Id.*)  The petitioner also waived a hearing pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (1974), stating that he knew that the purpose of the hearing was to decide the extent to which the prosecutor could cross-examine him about any prior bad acts.  (*Id.* at 65.)

The record of the pretrial proceedings reflects that the petitioner was obstreperous and frequently delayed the case.  For example, he repeatedly spoke over the judge, arguing about rulings the judge had already made, including rulings that were favorable to him.  (*Id.* at 12.)  He filed multiple duplicative motions before the court had a chance to rule on the first one.  (*Id.* at 14.)  And he demanded that his private investigator—whom he was suing—appear in court.  (*Id.* at 65.)  When the court explained that the investigator had nothing to do with the trial, the petitioner called Judge Holder a "meatball."  (*Id.* at 67–68.)  At that point, the court appointed a lawyer and threatened to remove the petitioner from the courtroom if he did not stop interrupting.  (*Id.* at 69–72.)

Later that same day, the Honorable James Griffin held a *Sandoval* hearing at defense counsel's request, to determine the extent to which the prosecutor could cross-examine the petitioner about his prior convictions and bad acts at trial.  The petitioner repeatedly interrupted the hearing, at times agreeing that his lawyer should argue the motion and at other times asking to "withdraw it and leave it alone."  (*Id.* at 9.)  Ultimately, defense counsel asked the court to exercise its discretion, and the court ruled that the prosecutor could ask "one question only: Isn't it true that you have been convicted in the past of three misdemeanors?"  (*Id.*)

## II.      Trial

On the first day of the bench trial, February 4, 2015, the petitioner refused to come into the courtroom.  When the judge noted the petitioner's refusal the next day, the petitioner called him an "asshole."  (*Id.* at 84.)  Judge Holder ordered that the petitioner be removed from the courtroom and adjourned the trial.  (*Id.*)  The trial finally began on April 21, 2015; the petitioner was present on the first day but then refused to come back to the courtroom until closing arguments.

### a.  The Prosecution's Case

The prosecution called seven witnesses: Detective Ronald Martiny, Equintal Middleton, emergency medical technician Brandon Weber, Officer Omar Castillo, Detective Daniel Bengig, and victims Martha Terrell and Carmen Stewart.  Their testimony established the following facts:

At around 2 p.m., on January 15, 2014, seventy-two-year-old Carmen Stewart was walking to a bus stop in St. Albans, Queens, when a man riding a bike approached her and said, "Hi, ma'am."  (ECF No. 12-5 at 235.)  Ms. Stewart ignored the man and kept walking.  After the bike "grazed" her, the man punched her in the right cheek, causing her to fall.  (*Id.*)  The man wrestled her bag away, and rode off on his bike.  (*Id.* at 236.)  She had $300 and credit cards in the bag.  (*Id.*)  Ms. Stewart asked a nearby store employee to call 911 for her.  (*Id.* at 238.)   The police and EMTs arrived.  An EMT examined Ms. Stewart and gave her ice for her face.  (*Id.*)  The police interviewed her at the scene, and then took her to a precinct, where Detective Martiny showed her several "different pictures of different people" on the computer; Ms. Stewart did not recognize anyone.  (*Id.* at 239.)

As a result of the attack, Ms. Stewart had a headache for a day, and pain in her face and jaw for a week; there was a knot on her jawbone for a month.  (*Id.* at 236–37.)

As part of his investigation, Detective Martiny retrieved video footage that showed a man matching Ms. Stewart's description in the vicinity of the robbery.  (*Id.* at 102.)  Ms. Stewart confirmed that the man was the one who assaulted her.  (*Id.* at 240.)  Detective Martiny used a still frame from the video to create a wanted poster.  (*Id.* at 103.)

The next day, at about 10 a.m, seventy-three-year-old Martha Terrell was walking to her St. Albans home from a nearby supermarket when a man came up from behind her, put his arm around her neck, and started choking her.  (*Id.* at 215.)  Ms. Terrell could not breathe, but managed to hit the man with a grocery bag, causing him to lose his hold on her, although he still held her left arm.  (*Id.* at 216.)  The man pushed her to the ground, and bent her thumb back to force her to give up her bag, which contained her credit cards, driver's license, metro card, Medicaid card, and a pair of gold and diamond earrings.  (*Id.* at 217.)  He took the bag and ran a short distance before slowing to a limp.  (*Id.* at 219.)  He then got on a bike and rode away.  (*Id.*)  Ms. Terrell flagged down Equintal Middleton, who called 911, and drove her around to search for her attacker.  (*Id.*)  When that proved unsuccessful, Mr. Middleton took Ms. Terrell to the precinct, where she spoke to Detective Martiny.  She said that the robber was riding a bike and wearing an orange or yellow shirt and blue jeans.  (*Id.* at 220.)

After the robbery, Ms. Terrell had pain in her left elbow, left thumb, and lower back for three months, and had to see a doctor.  (*Id.* at 218.)

On January 20, 2014, officers from another precinct saw the petitioner riding a bike on the sidewalk near Linden Boulevard and 217th street.  (*Id.* at 198.)  The intersection was busy, and pedestrians had to move out of his way, so Officer Castillo "determined he would be taken into custody."  (*Id.* at 198–200.)  Another officer recognized the petitioner from the wanted poster and contacted Detective Martiny's unit.  (*Id.* at 113.)

Detective Martiny interviewed the petitioner the same day.  He advised the petitioner of his constitutional rights from a form.  (*Id.* at 115.)  The petitioner answered that he understood each right and signed his name next to each question on the form.  (*Id.* at 119–22.)  Detective Martiny then asked the petitioner if he was willing to answer questions, a question that was also on the form.  (*Id.* at 122.)  The petitioner said that he was, signed the form, and wrote something that was largely illegible below his signature.  (*Id.*)

Next, Detective Martiny showed the petitioner a copy of the still photo from the surveillance video.  The petitioner confirmed in writing that he was the person in the photo, and then signed and dated the copy.  (*Id.* at 129.)  He told the detective that he blacked out at times and did not remember things.  He limped because he had a hernia and osteoporosis, and rode a bike.  (*Id.* at 126.)  The next day, Ms. Stewart and Ms. Terrell separately identified the petitioner at a lineup.  (*Id.* at 221, 241.)

On cross-examination, defense counsel asked Ms. Terrell about a different still photograph from the video camera; the court sustained the prosecutor's objection, because "you can't identify anything of this person."  (*Id.* at 232.)

Using the same photograph, defense counsel asked Ms. Stewart if she recognized the man in it.  (*Id.* at 244.)  Ms. Stewart replied, "This is far off, I can't even see this . . . you can hardly see that guy.  This is a very bad picture.  I want to tell you it's no good."  (*Id.* at 245–46.)  When counsel asked again if she recognized the man in the picture, the court sustained the prosecutor's objection.  (*Id.*)

At that point, counsel moved for a mistrial, claiming that he should have been permitted to ask the witnesses whether they recognized the petitioner in his still photograph.  The court denied the motion, observing that counsel was asking the witness "to make a decision on

something that she cannot even identify at all." (*Id.* at 249.) The court also found that Ms. Stewart answered the question when she said that she could not "make this picture out." (*Id.*)

### b. The Defense Case

The defense did not put on any evidence.

### c. Verdict and Sentencing

Judge Holder found the petitioner guilty of two counts each of second-degree robbery, third-degree robbery and second-degree assault. On June 16, 2015, the court sentenced the petitioner to a total of fourteen years in jail: consecutive seven-year terms for each second-degree robbery count, concurrent two-to-six-year terms for the third-degree robbery counts, and concurrent six-year terms for the assaults followed by ten years of post-release supervision. (*Id.* at 285–86.)[3]

### III.   Post-judgment Motions

### a. First CPL 440 Motion

In July 2015, the petitioner filed a CPL 440.20 motion to set aside his sentence, claiming that he should not have been sentenced as a predicate violent felon, that the court relied on so-called "noncriminal acts," and that the length of the sentence exceeded that which was authorized by statute. Judge Holder denied the motion, because the petitioner was not sentenced as a predicate violent felon, and the sentence was below the statutory maximum and not based on noncriminal acts. (SR. 196–200.)

### b. Second CPL 440 Motion

In October 2015, the petitioner filed a motion titled "Writ of error coram nobis / vobis," which the court construed as a CPL 440.10 motion to vacate judgment. (SR. 236–37.) In that

---

[3] The petitioner was removed from the courtroom after he called Judge Holder a "meatball."

motion, the petitioner argued the indictment was invalid, the grand jury did not vote on the

indictment, and the court lacked jurisdiction.  (SR. 201–30.)  The court denied this motion as

well, concluding that these arguments should have been raised on direct appeal.  (SR. 237.)

### c.  Third CPL 440 Motion

In February 2016, the petitioner filed a motion to vacate his conviction and sentence

pursuant to CPL 440.10 and 440.20.  (SR. 281.)  He argued that (1) the indictment was not a true

bill voted on by the grand jury, (2) the counts in the indictment were inclusive of each other, (3)

trial counsel was ineffective and (4) the court should have permitted him to represent himself.

(SR. 239–51.)

The court denied this motion, finding that claims about the indictment and the court's

decision to appoint counsel were matters of record that had to be raised on direct appeal rather

than in a 440.10 motion.  (SR. 278–84.)  As for ineffective assistance of counsel, the court found

that argument "conclusory and self-serving."  (*Id.*)  In any event, because the petitioner could

have raised all of these claims in his first 440 motion, CPL 440.10(3)(c) barred their review.

(SR. 284.)

The petitioner did not seek leave to appeal the court's decisions on any of these 440

motions.  (ECF No. 12-1 at 10–12.)

### d.  Fourth CPL 440 Motion

In January 2017, the petitioner again moved to vacate his conviction or sentence pursuant

to CPL 440.10 and 440.20.  (SR. 285–305.)  He argued that (1) the court lacked personal

jurisdiction, (2) the judgment was procured by duress or fraud, (3) the prosecution and the court

acted improperly, (4) his sentence was excessive, (5) the prosecution and the court were biased

against him, (6) his lawyer was ineffective, (7) the lineup was tainted and (8) there was no true bill of indictment.  (*Id.*)

The court denied the motion, finding that most of the claims, which the petitioner had already made in previous petitions, could have been raised on direct appeal and were therefore barred.  The court then rejected the ineffective-assistance and lineup claims because the petitioner could have raised them in earlier petitions.  (*Id.*)  The petitioner sought to appeal the trial court's decision, but Second Department denied leave.  (SR. 392.)

### e.  Direct Appeal

The petitioner, represented by appellate counsel, appealed his conviction to the Second Department on October 20, 2018, claiming that the trial court improperly denied him the right to represent himself, that he did not knowingly waive a jury trial, that the court limited cross-examination of the complainants in violation of the Sixth Amendment and that Detective Martiny's testimony improperly bolstered the witnesses' identification.  (SR. 1-46.)  In a *pro se* supplemental brief, the petitioner argued that he was arrested without probable cause, that his *Miranda* waiver was invalid, that the grand jury did not vote on the indictment and that the indictment was not filed.  (SR. 47-83.)

The Second Department affirmed the conviction, finding that the trial judge "did not improvidently exercise its discretion in denying the [petitioner's] request to proceed pro se," because the petitioner "engaged in conduct which would prevent the fair and orderly exposition of the issues."  *People v. Wingate*, 184 A.D.3d 738, 739 (2020) (internal quotation marks and citation omitted).  The court also rejected the petitioner's Sixth Amendment claim as without merit and found that the petitioner had not preserved his claims concerning jury-trial waiver,

bolstering, probable cause or *Miranda*, declining to review them in the "interest of justice jurisdiction." *Id.* at 739–40.

As for ineffective assistance, the court found that the claim about trial counsel was "mixed" and could not be resolved "without reference to matter outside the record," meaning that it should have been brought in a CPL 440.10 proceeding. *Id.* at 740. And the petitioner's claims regarding his appellate counsel had to be brought by way of a coram nobis writ. *Id.*

Finally, the court vacated and dismissed the third-degree robbery convictions because they "were concurrent inclusory counts of the two counts of robbery in the second degree" and "[a] verdict of guilt upon the greater count is deemed a dismissal of every lesser count." *Id.* The court found the petitioner's "remaining contentions, including those raised in his pro se supplemental brief" to be "without merit." *Id.* at 741.

On July 8, 2020, the petitioner, through appellate counsel, sought leave to appeal the Second Department's rulings on the Sixth Amendment confrontation issue, the jury-trial waiver and the petitioner's right to represent himself. (SR. 169–86.) In a *pro se* supplemental brief, the petitioner also argued that the indictment was invalid, that his lawyer was ineffective, that he was arrested without probable cause, and that the prosecution did not prove that the victims were injured. (ECF No. 45 at 4–7.) The New York Court of Appeals denied leave to appeal on August 28, 2020. (SR. 187.)

**f.   Fifth CPL 440 Motion**

In March 2020, the petitioner filed another 440.10 motion, repeating his arguments about the indictment and the court's jurisdiction.  (SR. 393–405.)[4]  The court denied the motion because the Appellate Division denied those claims on the merits.  (SR 436–37.)

**g.   Coram Nobis Motions**

In December 2015, the petitioner moved for a writ of error coram nobis alleging that his appellate counsel did not file a timely notice of appeal.  (SR 439–44.)  The Second Department denied the motion because counsel filed a timely notice of appeal.  (SR. 472.)  In October 2016, the Court of Appeals denied leave to appeal.  (SR. 483.)

In September 2020, the petitioner moved for a second writ of error coram nobis, claiming ineffective assistance of counsel.  (SR. 485–517.)  The Second Department denied the motion because the petitioner did not establish that his lawyer was ineffective.  (SR. 549.)

**h.   State Habeas Petition**

In July 2019, the petitioner filed a petition for a writ of habeas corpus with the state court. (SR. 550–93.)  He claimed, among other things, that the indictment against him was invalid and the court lacked jurisdiction to prosecute him.  (*Id.*)  The court rejected these claims, finding that habeas relief was not appropriate because the petitioner could have raised his claims in a 440.10 motion or on direct appeal.  (SR. 601–03.)  At that point, the petitioner's appeal was pending in the Second Department, so the court denied the petition in its entirety.  (*Id.*)  The petitioner appealed the decision, which was affirmed by Fourth Department.  (SR. 630.)

---

[4]  The petitioner conceded that these were "identical [to] claims alleged in his prior motions to vacate judgment."  (SR. 435.)

### i.  Federal Habeas Petition

The petitioner filed this petition on February 3, 2021.  (ECF No. 1.)  Since that filing, the

petitioner made numerous additional filings, including a demand for an evidentiary hearing, a

claim of newly discovered evidence, and a demand for "discovery compliance."  (ECF No. 45.)[5]

### LEGAL STANDARD

A federal court reviewing a habeas petition must not "review a question of federal law

decided by a state court if the decision of that court rests on a state law ground that is

independent of the federal question and adequate to support the judgment."  *Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991).  This doctrine applies to substantive and procedural state

law grounds alike.  *Id.* at 729–30.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a

federal court reviewing a state prisoner's habeas petition to give deference to a state court's

decision on the merits.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas

corpus unless the state court's decision on the merits was "contrary to, or involved an

unreasonable application of, clearly established Federal law" or was "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*,

806 F.3d 104, 116–17 (2d Cir. 2015).  "[R]eview under § 2254(d)(1) is limited to the record that

was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563

U.S. 170, 181 (2011).

---

[5]  In addition to the filings mentioned here, the petitioner has filed multiple letters in which he made
meritless claims.  (*See* ECF Nos. 28, 36, 39, 40, 42, 44, 46.)

"When a state court" "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment," "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). For example, a state court ruling simply that a claim is "without merit" constitutes an adjudication on the merits of that claim. *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (citing *Fama v. Comm'r of Corr. Services*, 235 F.3d 804, 810–11 (2d Cir. 2000)). In such a case, "the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311–12.

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A petitioner can seek federal habeas corpus relief only after he exhausts his state court remedies and gives the state court a fair and full opportunity to review the merits of the claim.

28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

The petitioner advances the following arguments: (1) the grand jury voted not to indict him, (2) the prosecution and the court engaged in misconduct, (3) he was arrested without probable cause, (4) the lineup was tainted, (5) his *Miranda* waiver was invalid, (6) his convictions were not supported by legally sufficient evidence, (7) the sentencing court improperly considered his criminal history as a factor in imposing the sentence and (8) ineffective assistance of counsel.

### I.     The Indictment

The petitioner has challenged the validity of the indictment in multiple motions seeking post-judgment relief. He has argued that the indictment was deficient because the foreperson did not sign it (SR. 211); that there was no indictment (SR. 201); and most recently, that the grand jury voted not to indict him at all (ECF No. 1 at 6). The petitioner also argues that the prosecutor and judge engaged in misconduct because they "knew the case was without an indictment." (ECF No. 1 at 8.)

There is no federal constitutional right to indictment by a grand jury in a state criminal prosecution. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Davis v. Mantel*, 42 F. App'x 488, 490 (2d Cir. 2002). Accordingly, "a claim of deficiency in the proceeding is not cognizable in a habeas corpus proceeding." *May v. Warden*, No. 07-CV-2176, 2010 WL 1904327, at *3 (S.D.N.Y. May 10, 2010). Moreover, any error before the grand jury is rendered

harmless by a conviction after trial.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).  Thus, "[c]hallenges to state indictments will merit habeas corpus relief only in the exceptional case where the indictment fails to satisfy the basic due process requirements: notice of the time, place, and essential elements of the crime." *Nordahl v. Rivera*, No. 08-CV-5565, 2013 WL 1187478, at *5, (S.D.N.Y. Mar. 21, 2013) (citations omitted).

The petitioner claims only that the "Grand Jury never issued an indictment" (ECF No. 1 at 5) and does not make any due process arguments, so his claim is not cognizable.  In any event, the record establishes that the grand jury voted to indict him, and that the foreperson and the district attorney signed the indictment.  (SR. 645–55.)  The indictment also specifies the dates, places, and elements of the charged crimes.  (*Id.*)  Accordingly, the petitioner is not entitled to relief on this claim.

### II.      Probable Cause and the Lineup

The petitioner argues that there was "[n]o probable cause to arrest" him.  (ECF No 1 at 2.)  This claim is not cognizable and is procedurally barred.

As a general matter, federal courts cannot review state court probable-cause determinations on habeas review.  *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").  Habeas review is available only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v.*

16

*Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)).  "An unconscionable breakdown occurs when the

state court fails to conduct a reasoned inquiry into the petitioner's claim," *Valtin v. Hollins*, 248

F. Supp. 2d 311, 317 (S.D.N.Y. 2003); "a mere disagreement with the outcome of a state court

ruling is not the equivalent of an unconscionable breakdown in the state's corrective process,"

*Capellan v. Riley*, 975 F.2d 67, 72 (2d Cir. 1992).

"Courts have repeatedly recognized that New York provides an adequate corrective

procedure for Fourth Amendment claims."  *Gray v. Lamanna*, No. 17-CV-6324, 2021 WL

4844536, at *8 (E.D.N.Y. Oct. 18, 2021).  "For this reason, federal courts within this Circuit

have almost uniformly held that challenges to New York State court rulings . . . are not

reviewable" in habeas petitions.  *Id.*  This case is no different.  The state provided the petitioner

with "an opportunity for full and fair litigation" of his Fourth Amendment challenges, an

opportunity that the petitioner knowingly and voluntarily waived when he declined to have a

suppression hearing.  (ECF No. 12-4 at 42, 53–56.)  Nor was there "an unconscionable

breakdown in the underlying process."  Accordingly, this claim is not cognizable.

Moreover, this claim is procedurally barred, because the Second Department found that

the petitioner did not preserve it for appellate review.  *Wingate*, 184 A.D.3d at 740.  This Court,

therefore, cannot review it because of the independent and adequate state law doctrine.  *Lee v.

Kemna*, 534 U.S. 362, 375 (2002); *see also Read v. Thompson*, No. 13-CV-6962, 2016 WL

165716, at *10 (S.D.N.Y. Jan. 13, 2016) ("The Second Circuit had determined that New York's

preservation rule is an independent and adequate state procedural ground ordinarily barring

habeas review." (internal quotation marks, brackets, and citation omitted)).

A petitioner can overcome this procedural bar by showing "cause for the default and

actual prejudice as a result of the alleged violation of federal law" or by demonstrating "that

failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (citations omitted). To establish "cause" for a procedural default, the petitioner must show that "some objective factor external to the defense impeded" his effort to comply with the state procedural rule in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish "actual prejudice," a petitioner must show that "errors at his trial . . . worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). To show that here would be a "fundamental miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. The petitioner has not established that any of these exceptions apply.

## III.   The Lineup

The petitioner argues that the lineup identifications were tainted because the room was "not soundproof" and because one of the officers "told Martiny and the [two] witnesses [his] number." (ECF No. 1 at 5, 15.)

This claim is procedurally barred. As discussed above, the petitioner waived his right to all suppression hearings, including one to suppress the identifications. Moreover, the trial court denied this claim on the petitioner's fourth 440.10 motion, because the petitioner never raised it in his prior motions. (SR. 333.) As explained above, "a procedural waiver under state law [that is] sufficient to prevent review of the defendant's substantive claim in the state courts also constitutes an independent state ground that bars federal consideration of the substantive claim on habeas corpus." *Gonzalez v. Sullivan*, 934 F.2d 419, 421 (2d Cir. 1991). And "courts in this Circuit have concluded that a state court denial based upon CPL § 440.10(3)(c) constitutes an

adequate and independent state law ground, which forecloses federal habeas corpus review." *Steward v. Graham*, No. 01-CV-0569, 2008 WL 2128172, at*8 (N.D.N.Y. May 19, 2008).

The petitioner cannot overcome this procedural bar, because he has not demonstrated "cause for the default," "actual prejudice" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (citations omitted).  Indeed, he waived his right to contest the identifications at a suppression hearing.  Accordingly, his petition for habeas corpus relief is denied.

## IV.   *Miranda* Waiver

The petitioner claims that he asked for a lawyer after his arrest, but that his request was denied.  (ECF No. 1 at 7.)  He also claims that he wrote "P. P." by his signature on the *Miranda* waiver form to indicate that he signed it "under peer pressure." (*Id.*)  The Second Department dismissed these arguments as unpreserved for appellate review, *Wingate*, 184 A.D.3d at 740, a determination that is an independent and adequate state ground that precludes habeas review in this Court.  *See Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).

Here, too, the petitioner cannot demonstrate cause for the default, actual prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice.  Although he argued in state court that his *Miranda* waiver was invalid, he has never claimed that he was denied the right to counsel.  *See United States v. Yanishefsky*, 500 F.2d 1327, 1331 (2d Cir. 1974) (a defendant's post-trial assertion, not based on any fact in the record, that she requested and was denied counsel during an interrogation was insufficient to make her statements inadmissible.)  Moreover, there is no "P.P." on the *Miranda* form.  Instead, the petitioner appears to have written something that is only partially legible: "I will stop if needed to protect

[illegible]." (SR. 657.) Nor would his writing have any legal significance. In short, there is no evidence that the petitioner asked for counsel, or that his request was denied.

### V.    Sufficiency of the Evidence

The petitioner argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt, because the prosecutor did not prove the victims' ages or that they suffered physical injury. (ECF No. 1 at 15.) The petitioner raised this argument for the first time in his *pro se* brief seeking leave to appeal to the Court of Appeals. (SSR. 3–4.)[6]

A petitioner may not raise "a federal claim for the first time in an application for discretionary review to a state's highest court." *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004). "Nonetheless, even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law." *Id.* This claim is procedurally barred because there are no state remedies still available to the petitioner. *See Coleman*, 501 U.S. at 732; *Read v. Thompson*, No. 13-CV-3661, 2016 WL 165715, at *7 (S.D.N.Y. Jan. 13, 2016) ("New York permits only one application for direct review.").

The petitioner has not demonstrated cause for the default or actual prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice. Regardless, the evidence at trial established that each victim was more than sixty-five years old when the petitioner robbed them and that the victims were injured. Ms. Terrell testified about injuries to her elbow, thumb and lower back, which caused her pain for months; Ms. Stewart testified that the petitioner punched her in the face, causing pain in her face and jaw for an extended period.

---

[6] Supplemental state court record, attached to ECF No. 45.

(ECF No. 12-5 at 215, 217–19, 236–37, 247.)  The petitioner is not entitled to habeas relief on this claim.

## VI.     The Petitioner's Sentence

The petitioner challenges his sentence, claiming that "[the] Judge imposed [a] sentence on all charges and used cases outside [S]andoval decision over 10 years old."

The petitioner has challenged his sentence in his first and fourth 440 motions.  He has argued that the court's conclusion that he was a predicate violent felon was improper, because the court relied on noncriminal acts, and that his sentence was excessive.  (SR. 196–200, 285–305.)  The court, however, found that "[t]he sentence . . . was authorized under law, legally imposed and valid," because the petitioner was not sentenced as a predicate violent felon and because the court did not base the sentence on so-called "non-criminal acts."  (SR. 190, 198.) The court also found that the petitioner's excessive sentence claim was procedurally barred because could have been raised on direct appeal.  (SR. 333.)

In any event, there is no basis for federal habeas review.  The trial court found that "Defendant's imposed sentence . . . was actually less than the maximum that was statutorily authorized."  (SR. 199.)  And it "is well-established that when a sentence falls within the range prescribed by state law, the length of the sentence generally may not be raised as a basis for federal habeas relief."  *Silva v. Keyser*, 271 F. Supp. 3d 527, 545 (S.D.N.Y. 2017); *see also White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.").

To the extent that the petitioner is arguing that the sentencing court acted improperly in considering his criminal history at sentencing, that claim is not exhausted.  "When confronted with a "mixed" petition that contains exhausted and unexhausted claims, a district court can deny

the unexhausted claims on the merits." *Broxton v. Lee*, No. 09-CV-5373, 2020 WL 10500555, at

*17 n.53 (E.D.N.Y. Mar. 12, 2020).  New York courts are permitted to consider defendants'

criminal histories in sentencings.  The petitioner's claim is plainly meritless, and accordingly, is

not a cognizable basis for federal habeas relief.

### VII.   Ineffective Assistance of Counsel

Finally, the petitioner argues that he received "ineffective assistance of counsel" at trial

because his counsel colluded with the judge, prosecutor and his own private investigator to bring

the case against him without an indictment.  (ECF No. 1 at 3, 8.)  The petitioner made this claim

on direct appeal to the Second Department and in seeking leave from the New York Court of

Appeals.

The Second Department found that this claim was based on matters both on and off the

record, and thus should have been raised in a CPL 440 motion.  *Wingate*, 184 A.D.3d at 740.

When the petitioner raised this claim in his third CPL 440 motion, the court rejected it as

"conclusory, self-serving, and unsubstantiated" and barred under CPL 440.10(3)(c).  (SR. 283–

84.)  The petitioner raised it again in his fourth 440 motion, and the court concluded again that it

was barred by 440.10(3)(c).  (SR. 333.)

This claim is not reviewable in this Court, because of the petitioner's procedural default

in state court.  As the trial court noted, "[t]hese alleged claims also involve matters that,

assuming true, have been known to defendant since the filing of his first motion to vacate

judgment . . . [and] could have been raised in that motion, and unjustifiably, was not."  (SR. 283;

*see also* SR. 333 ("These claims do not present any new evidence that was not known to the

defendant at the time he filed [his] prior motions.").)  The trial court's reliance on this

independent and adequate state procedural rule to deny the petitioner's claim for ineffective

assistance of counsel precludes federal habeas review of that claim, because the petitioner has

not demonstrated cause for the default, actual prejudice or that failure to consider the claims will

result in a fundamental miscarriage of justice.

In any event, the Court finds no error in the trial court's determination that this claim is

"conclusory, self-serving, and unsubstantiated" (SR. 280).  *See* 28 U.S.C. § 2254(d) (a writ of

habeas corpus will not issue unless the state court's decision on the merits was "an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding").

**CONCLUSION**

For these reasons, the petition for a writ of habeas corpus is denied in its entirety.  The

case is dismissed.  A certificate of appealability will not be issued.  *See* 28 U.S.C. § 2553(c).

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
       August 8, 2023